UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARY C. ENGEL,

        Plaintiff,

   v.

MICHAEL BARRY, et. al.,

        Defendants.

2:03-CV-2403-MCE-KJM

MEMORANDUM AND ORDER

----oo0oo----

Through the present action, Plaintiff Mary Engel ("Plaintiff") claims that Defendants Michael Barry, Deputy Brian Hammer, Deputy William Sowles, and Scott Sparks (collectively, "Defendants") violated her civil rights during the course of her arrest for felony child endangerment.

///
///
///
///
///
///

1

Specifically, Plaintiff alleges federal claims under the Civil Rights Act of 1871 ("Section 1983"), 42 U.S.C. § 1983, including false arrest, false imprisonment, assault under color of law, assault and battery, cruel and unusual punishment, violation of right to counsel, illegal search and seizure, taking of personal property without due process or just compensation ("Extortion"), racial discrimination, conspiracy, and negligence/deliberate indifference ("Federal Claims").  In addition, Plaintiff raises state claims of trespass to land, trespass to chattel, and invasion of privacy ("State Claims").

Defendants are now seeking summary judgement, or in the alternative, summary adjudication of Plaintiff's remaining Federal and State Claims.[1]  For the reasons set forth below, Defendants' Motion for Summary Adjudication is granted as to Plaintiff's remaining Federal Claims.  In addition, the Court declines to exercise its supplemental jurisdiction regarding Plaintiff's State Claims.  Accordingly, Plaintiff's remaining State Claims are dismissed without prejudice.[2]

///
///

---

[1] Through Defendants' prior Motion to Dismiss, a number of Plaintiff's claims have been disposed.  Specifically, in an Order dated August 17, 2004, the Court dismissed without leave to amend Plaintiff's Section 1983 claims alleging false arrest, false imprisonment, cruel and unusual punishment, violation of right to counsel, and deliberate indifference for improper training claims.  Plaintiff's Section 1983 claim alleging illegal search and seizure has also been dismissed.  *See* Mem. & Order, December 15, 2006.

[2] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

**BACKGROUND**

The Court has already set forth a detailed factual background for this action in its Order of August 17, 2004, which is incorporated by reference and need not be reproduced herein. Mem. & Order 2-5, August 17, 2004.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); *see also Allstate Ins. Co. v. Madan*, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); *France Stone Co., Inc. v. Charter Township of Monroe*, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

///
///
///

1   The standard that applies to a motion for summary
2 adjudication is the same as that which applies to a motion for
3 summary judgment.  *See* Fed. R. Civ. P. 56(a), 56(c); *Mora v.*
4 *ChemTronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).
5      Under summary judgment practice, the moving party
       always bears the initial responsibility of informing
6      the district court of the basis for its motion, and
       identifying those portions of 'the pleadings,
7      depositions, answers to interrogatories, and admissions
       on file together with the affidavits, if any,' which it
8      believes demonstrate the absence of a genuine issue of
       material fact.
9
10 *Celotex Corp. v. Catrett*, 477 U.S. at 323(quoting Rule 56(c)).
11   If the moving party meets its initial responsibility, the
12 burden then shifts to the opposing party to establish that a
13 genuine issue as to any material fact actually does exist.
14 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
15 585-87 (1986).
16   In attempting to establish the existence of this factual
17 dispute, the opposing party must tender evidence of specific
18 facts in the form of affidavits, and/or admissible discovery
19 material, in support of its contention that the dispute exists.
20 Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
21 the fact in contention is material, i.e., a fact that might
22 affect the outcome of the suit under the governing law, and that
23 the dispute is genuine, i.e., the evidence is such that a
24 reasonable jury could return a verdict for the nonmoving party.
25 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251-52
26 (1986); *Owens v. Local No. 169, Assoc. of Western Pulp and Paper*
27 *Workers*, 971 F.2d 347, 355 (9th Cir. 1987).
28 ///

4

Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more that simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///
///
///
///
///
///

**ANALYSIS**

**I.   Qualified Immunity**

A private right of action pursuant to 42 U.S.C. § 1983 exists against law enforcement officers who, acting under the color of authority, violate federal constitutional or statutory rights of an individual. *See Wilson v. Layne*, 526 U.S. 603, 609, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999).  The defense of qualified immunity, however, shields an officer from trial when the officer "reasonably misapprehends the law governing the circumstances she confronted," even if the officer's conduct was constitutionally deficient. *Brosseau v. Haugen*, 543 U.S. 194, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004)(per curiam).

Where, as here, some or all of the defendants seek qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  In *Saucier*, the Supreme Court laid out the framework for determining an officer's entitlement to qualified immunity.  The threshold inquiry requires a court to ask, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Id.* at 201. The inquiry ends at this stage if no constitutional right is found to have been violated; the plaintiff cannot prevail.  *Id.*
///
///

1    If, on the other hand, the plaintiff's allegations do make
2 out a constitutional injury, then the court must determine
3 whether that constitutional right was clearly established at the
4 time of the violation.  *Id.*  If the right was not clearly
5 established, the qualified immunity doctrine shields the officer
6 from further litigation.  *Id.*  Finally, even if the violated
7 right was clearly established, the *Saucier* court recognized that
8 it may be difficult for a police officer fully to appreciate how
9 the legal constraints apply to the specific situation he or she
10 faces. Under such a circumstance, "if the officer's mistake as to
11 what the law requires is reasonable, . . . the officer is
12 entitled to the immunity defense."  *Id.* at 205.
13    Plaintiff argues that Defendants are estopped from seeking
14 Summary Adjudication because this Court earlier denied
15 Plaintiff's Motion for Summary Judgment on the ground that
16 material issues of fact exist in this case.  *See* Mem. & Order,
17 December 15, 2005.  Plaintiff's, however, misapprehend the
18 standard when a qualified immunity defense has been plead.  As
19 noted above, the issue is no longer whether material facts are
20 disputed but instead whether the facts, taken in the light most
21 favorable to Plaintiff, show the Defendants' conduct violated a
22 constitutional right.

24    **1.   Excessive Force**

26    Plaintiff alleges, *inter alia*, that Defendants used
27 excessive force against her during her arrest for felony child
28 endangerment.

7

Specifically, Plaintiff first avers that the force used against her in effecting her arrest was unreasonable because Officer Sowles elected to charge Plaintiff with felony child endangerment which provides for an arrest rather than misdemeanor child endangerment which is generally a cite and release offense. Pl.s' Opp., p. 6:6-11. Contrary to Plaintiff's assertion, Officer Sowles was constitutionally permitted to arrest Plaintiff if he had probable cause to believe she committed a criminal offense. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 350 (2001). In *Atwater,* the Supreme Court held that if an officer has probable cause to believe that an individual has committed even a very minor criminal offense, he may, without violating the Fourth Amendment, arrest the offender. *Id.* at 354. Here, Officer Sowles unquestionably had probable cause to believe Plaintiff committed a crime giving him authority both legally and constitutionally to arrest her.

Next, Plaintiff argues that Officer Sowles used excessive force when he "banged her head into the hood of her car and jammed his thumb behind her jaw." Pl.s' Opp., p. 6:18-19. Plaintiff contends that Officer Sowles' use of force and a control hold to secure her prior to and during the course of her arrest constituted excessive force. The Court disagrees.

In order to defeat Defendants' claim of qualified immunity, Plaintiff must allege a constitutional violation. Plaintiff has alleged that Officer Sowles violated the Fourth Amendment. The Fourth Amendment, however, does not prohibit a police officer's use of reasonable force during an arrest. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)

8

1  ("the right to make an arrest or investigatory stop necessarily
2  carries with it the right to use some degree of physical coercion
3  or threat thereof to effect it" (citing Terry v. Ohio, 392 U.S.
4  1, 22-27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968))).
5       The salient inquiry here is whether Officer Sowles' actions
6  were "objectively reasonable in light of the facts and
7  circumstances confronting him. *See id.* at 397. The Court must
8  consider the facts underlying an excessive force claim from the
9  perspective of a reasonable officer on the scene, without regard
10 to the arresting officer's subjective motivation for using force.
11 *See id.* at 396-97. Whether a particular use of force was
12 "objectively reasonable" depends on several factors, including
13 the severity of the crime that prompted the use of force, the
14 threat posed by a suspect to the police or to others, and whether
15 the suspect was resisting arrest. *See id.* at 396.
16      Plaintiff came upon the scene of social services officers
17 preparing to remove her children from her residence on charges of
18 child endangerment. In addition, animal control officers were
19 simultaneously preparing to remove her animals from her residence
20 based upon animal cruelty. The uncontroverted evidence
21 establishes that Plaintiff was visibly upset and using profanity
22 when she arrived at her residence. *See* Mary Engel Depo., p.
23 147:7-8 ("I told [Deputy Sowles], 'Get those people the fuck off
24 my property.'"); *see also* Sowles Decl., ¶10; Michael Berry Decl.,
25 ¶16. Plaintiff refused to obey Sowles' commands to calm down and
26 stop screaming prompting him to handcuff Plaintiff and place her
27 in his patrol vehicle. Sowles Decl., ¶10.
28 ///

9

In addition, considering as the Court must, whether Officer Sowles' actions were objectively reasonable in light of the foregoing facts and circumstances confronting him, the Court finds in the affirmative. The criminal conduct underlying Plaintiff's arrest and ultimate conviction were emotionally charged. Plaintiff expressly refused to follow Officer's Sowles instruction that she calm down and instead continued to hurl profanities and disrupt the officers from their tasks. Sowles Decl., ¶10. Before leaving the residence, Plaintiff began screaming in the back of the patrol car. *Id.* at ¶16. She continued screaming virtually incessantly until the patrol vehicle reached the main jail. *Id.* Inside the booking area of the jail, Plaintiff remained belligerent requiring deputies to prepare a restraint chair in anticipation of her arrival. *Id.* Faced with a potentially violent suspect, behaving erratically and resisting arrest, it was objectively reasonable for Officer Sowles to use force in the form of handcuffs and a nerve stimulation technique to secure Plaintiff. *See Tatum v. City & County of San Francisco*, 2006 U.S. App. LEXIS 8011, 10-11 (9th Cir. 2006). The Court finds that Defendants are entitled to qualified immunity on the charge of excessive force. Accordingly, Defendants' Motion for Summary Adjudication as to Plaintiff's excessive force claim is granted.

///
///
///
///
///

**2.   Due Process**

Plaintiff further alleges that Defendants deprived her of protections under the Fourth, Fifth, Eighth, and Fourteenth Amendments.  Pl's. Compl. 10-11.  Plaintiff is relying on 42 U.S.C. § 1983 to support her claim that Officer Sparks and Officer Sowles deprived her of her personal property under color of law and without due process.

Ordinarily, due process of law requires notice and an opportunity for some kind of hearing prior to the deprivation of a significant property interest. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19, 56 L. Ed. 2d 30, 98 S. Ct. 1554 (1978).  However, summary governmental action taken in emergencies and designed to protect the public health, safety and general welfare does not violate due process.  It is well-settled that protection of the public interest can justify an immediate seizure of property without a prior hearing. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1318 (9th Cir. 1989).  Government officials need to act promptly and decisively when they perceive an emergency, and therefore, no pre-deprivation process is due.

Plaintiff's allegation that Deputy Sowles and Officer Sparks deprived her of her personal property without due process of law was an act by government officials for a purpose designed to protect the public health and general welfare as well as the welfare of the animals.  Plaintiff does not dispute the fact that she kept numerous dogs and cats inside the residence.

///

///

11

1 Animal control was called to the scene by law enforcement and
2 Officer Sparks ultimately sought and obtained a field release
3 from Plaintiff to collect the animals from the home.  Undisp.
4 Fact #11 & #12.  Plaintiff vehemently argues that she signed the
5 field surrender form under duress.  Even assuming that to be the
6 case, the Court finds that the animals were removed to protect
7 the public health in accord with due process principles.  In
8 addition, Plaintiff was afforded an opportunity to air her due
9 process claim during her criminal proceeding wherein the court
10 conditioned her plea on the requirement that she retain only one
11 animal.  Undisp. Fact #14.  Here, the facts, taken in the light
12 most favorable to Plaintiff, show that Defendants' conduct did
13 not violate Plaintiff's constitutional right to due process
14 because Defendants were acting in an emergency circumstance and
15 were only required to provide a post-deprivation hearing which
16 was timely accorded.  Therefore, Defendants' Motion for Summary
17 Adjudication of Plaintiff's due process claim is granted.

19 **3.   Equal Protection**

21      Plaintiff alleges that Defendants acted in concert to
22 racially discriminate against her in violation of the Equal
23 Protection Clause of the United States Constitution.  In
24 particular, Plaintiff alleges that upon seeing a sign in her yard
25 emblazoned with her surname, one of the Defendants asked if her
26 husband's name was "Morris."  Plf.s' Compl. ¶12.
27 ///
28 ///

12

1  Plaintiff claims the name Morris is traditionally associated with
2  the Jewish culture and that Defendants' reference to that name
3  indicated their anti-semitic bias.  Defendants rebut that
4  Plaintiff has no standing to bring this claim because she is not
5  a member of the protected class.
6      In fact, the Ninth Circuit teaches that a plaintiff
7  generally does not have standing under Section 1983 solely for
8  the purpose of vindicating the rights of minorities who have
9  suffered from discrimination.  *RK Ventures, Inc. v. City of*
10 *Seattle*, 307 F.3d 1045, 1055-1056 (9th Cir. 2002)(citing *Maynard*
11 *v. City of San Jose*, 37 F.3d 1396, 1402 (9th Cir. 1994)).  But
12 plaintiffs who are not members of the protected class have
13 standing to challenge racially discriminatory conduct in their
14 own right when they are the direct target of the discrimination.
15 *Id.* (citing *Estate of Amos v. City of Page*, 257 F.3d 1086,
16 1093-94 (9th Cir. 2001); *Maynard*, 37 F.3d at 1403).  The Ninth
17 Circuit clarified there is no bar to standing under the Equal
18 Protection Clause where an individual alleges a personal injury
19 stemming from his or her association with members of a protected
20 class.  *Id.*  While the foregoing clarifies that Plaintiff, as the
21 target of the alleged discrimination, has standing to assert an
22 equal protection claim, this does not end the inquiry.
23     The Equal Protection Clause of the Fourteenth Amendment
24 states: "No State shall . . . deny to any person within its
25 jurisdiction the equal protection of the laws."
26 ///
27 ///
28 ///

13

The Supreme Court has made clear, however, that the Equal Protection Clause requires proof of discriminatory intent or motive. *Navarro v. Block*, 72 F.3d 712, 716 (9th Cir. 1995)(internal citations and quotations omitted). Plaintiff has failed to allege any discriminatory intent or motive associated with Defendants' questioning Plaintiff as to her husband's first name. The mere commonality of the name "Morris" among those of Jewish heritage in no way evidences a discriminatory motive on Defendants' part. The Court finds the question in and of itself evidences no bias or discrimination whatsoever. Consequently, Defendants' Motion for Summary Adjudication of this claim is granted.

**4.   Conspiracy**

Plaintiff also alleges Defendants' acted in concert to deprive her of her constitutional rights. 42 U.S.C. § 1985 creates a civil action for damages caused by two or more persons who "conspire . . . for the purpose of depriving" the injured person of "the equal protection of the laws, or of equal privileges and immunities under the laws" and take or cause to be taken "any act in furtherance of the object of such conspiracy." 42 U.S.C. § 1985(3). The absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations. Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir. 2005).
///
///

14

Because Plaintiff can not sustain a Section 1983 claim, she cannot sustain her Section 1985 conspiracy claim. Accordingly, Defendants' Motion for Summary Adjudication of Plaintiff's conspiracy claim is granted.

**5.    Deliberate Indifference**

A municipality will only be found liable under section 1983 for a policy of inadequate training or supervision in limited circumstances. *See City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Inadequacy of training "may serve as the basis for section 1983 liability only where the [municipal entity's] failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* Moreover, a plaintiff alleging municipal liability under Section 1983 must show there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Id.* at 385.

As this Court stated in its Memorandum and Order dated December 15, 2005, Plaintiff offers no evidence whatsoever to establish the material facts underpinning her claim. Rather, she simply avers that the County of Sacramento indifferently trained Defendants. Plaintiff argues at length that Officer Sowles has engaged in discriminatory conduct both before and after his interaction with Plaintiff as evidenced by his ultimate termination from the Sacramento County Sheriffs Department. As an initial matter, the Court finds this evidence to be wholly irrelevant to the case at bar.

15

Even assuming it were relevant, however, it does nothing to bolster Plaintiff's claim of departmental indifference. In fact, precisely the opposite is true. Officer Sowles' termination on the ground that he engaged in discriminatory conduct shows a commitment to discipline and stamp out unethical conduct among its employees.

The Court finds no merit in Plaintiff's claim that the County of Sacramento was deliberately indifferent to the rights of persons with whom the police come into contact. Therefore, Defendants' Motion for Summary Adjudication on Plaintiff's deliberate indifference claim is granted.

**6.    Right of Privacy**

In its Order dated December 15, 2005, the Court construed Plaintiff's privacy claim as if it were brought on federal grounds. Defendants pointed out that Plaintiff's Complaint frames her right of privacy claim as a strictly state law claim. The Court reviewed Plaintiff's Complaint and agrees with Defendants that its earlier construction of Plaintiff's right of privacy claim was in error. Paragraph 14 of Plaintiff's Complaint clarifies that Plaintiff was asserting a violation of her right to privacy under the "California State Constitution and California law." *See* Plf.s' Compl. ¶14. In order to remove any potential uncertainty as to the foregoing, the Court hereby orders, *nunc pro tunc*, to its December 15, 2005, Order, that Plaintiff's right of privacy claim is strictly a state law claim.
///

16

**7.   State Law Claims**

The dismissal of Plaintiff's Federal Claims eliminates the federal question upon which jurisdiction in this Court was based. When all bases of federal jurisdiction are removed, a district court has discretion to decline to exercise supplemental jurisdiction over remaining non-federal claims. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc). Because original jurisdiction no longer exists in this case, the Court declines to exercise jurisdiction of Plaintiff's State Claims and the Court hereby dismisses those State Claims without prejudice. *See* 28 U.S.C. § 1367(c).

**CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Adjudication of Plaintiff's excessive force claim, due process claim, equal protection claim and conspiracy claim is GRANTED. Plaintiff's State Claims are hereby dismissed without prejudice.

IT IS SO ORDERED.

DATED: April 21, 2006

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE